Good morning, Your Honors. Jonathan Michaels for the Plaintiff and Appellant, Crown Chevrolet, if it may please the Court. If I may reserve four minutes for rebuttal. Okay, keep track of your time. It counts down. I thank you. I will. Your Honors, this case involves a scheme of racketeering activity by Ally Financial and certain General Motors employees that occurred back in 2008, right before, during the financial crisis. Ally Financial and certain General Motors employees attempted to take control over the General Motors market share for dealerships in the San Francisco East Bay area. As part of those efforts, General Motors employees, the defense in this case, and Ally Financial coerced Crown Chevrolet to sell two of its very valuable dealerships, a Chevrolet dealership and a Cadillac dealership to a gentleman by the name of Inder Desange and his company, Carg. The way that the deal was structured is really quite odd. It was a purchase agreement for less than fair market value with side agreements that they entered into for whatever reason that actually got the price to fair market value. So you say it's an odd agreement. How different was that agreement in substance from a normal agreement where I'll give you 20 percent now and I'll pay off the rest of it over time? It was quite different in several respects. First, a typical transaction for a dealership is you sell me the dealership and I give you money. What actually happened with one of these dealerships was the dealership was, the franchise was surrendered back to General Motors and it was then awarded to Carg and Mr. Desange by General Motors, which is significant because now, as the seller, I don't have the ability to have any kind of collateral on the note. Wait a minute. When you say it's significant, though, I mean how many of these transactions has the plaintiff been through to know all this history about all these different types of transactions? These are the two. About that, is there? These are the two transactions that he'd been in. Right. So all that history doesn't matter, does it? The question is, though, are you relying on this sort of differences in this, on these contracts, as a defense to the running of the statute? Well, the issue with regard to the statute of limitations, just to frame it, the complaint was filed in February 2013. There's a four-year statute of limitations. So the question really becomes did the plaintiff become aware of these events, of the injury? Should he have become aware? That's correct. So under the Ninth Circus Injury Discovery Rule, did he become aware or should he become aware of events that would have led him to believe that he had a claim? So what happened outside the four-year period that might have been sufficient to start the statute running? Well, I Obviously the district court thought that the statute started to run more than four years before you filed suit. So I believe what the district court looked at and what the defendants argued in the lower court was that Mr. Dijon's and his company card had defaulted on the initial purchase agreements in November 2008. Well, but they even at the beginning forced, I mean, this is his allegation, and that's his allegation as to why this is a RICO problem. They forced the sale. Well, they forced the sale before the default, and outside the was the forced sale itself an injury? I don't believe that the forced sale itself was an injury because if these agreements had been fulfilled, he would have been compensated for the dealership. But he alleges that he had another buyer ready and willing to take it who would have paid more. So it sounds as though if he hadn't been forced to sell to this particular new dealer, he would have sold for more. So it sounds as though the allegation of RICO injury starts right there. Respectfully, I don't believe that it does, Your Honor, because, yes, it's true that there was another dealer who had expressed interest in buying it, but there was nothing close to being a letter of intent. There were no substantial discussions about what that price would have been, would have been more or less, or would have actually occurred at all. All we know is that there was a forced sale where he, under the agreements, he did receive fair market value, so he wouldn't have had the ability to sue at that point in time. And it wasn't until June of 2009, which was within that 4-year statute limitation period, that he became aware that he had a claim. Remember, he was unaware. Now, weren't there defaults in payments way before that? Not way before then, Your Honor. It was in more than 4 years before the complaint was filed, right? Slightly. In November 2008 is when the first default came. But it came. Now, why isn't that noticed? Because it came coupled with several important things. And I'd like to invite the Court's attention to the Second Amendment complaint. Randy Parker, who is one of the defendants in the case who worked for General Motors at the time, gave Pat Costello, the owner of Crown Chevrolet, essentially a guarantee that these amounts were going to be paid. Guarantee in writing? Guarantee verbally, that these amounts were going to be paid. Give me something like, don't worry, I'll pay it? No, not I'll pay it, but I guarantee you that I'll vouch for this guy. This guy is going to pay it. In addition, there were subsequent payments made. So there's a default, and there were subsequent payments made after the default to cure the defaults. And then, importantly, between November 2008 and June 2009, there were substantial meetings between Inder Desange and Pat Costello that occurred multiple times per week. Let me ask you this. There was a settlement of the contract claim. So I don't know, is the amount of the settlement in the record? I don't believe it is, Your Honor. But he brought a contract claim for failure to pay up under the contract for sale. And that's now off the table because that claim has been settled. Yes, mostly correct. He didn't actually bring a claim. There were attorneys that were hired and, excuse me, there was a settlement that was ultimately reached. But that's off the table. It is off the table. It's settled. Correct. I'm not sure this is going to tell us what we need to know about the statute of limitations issue. But let me just ask you, why did your client wait so long to bring the RICO claim? Because he was unaware that all of this was happening. It wasn't until there was another companion case, if you will, that had the allegations with what was happening with Ally, with these employees from General Motors, that he learned, wow, that's exactly the same thing that happened to me with them forcing me out of the market with this financial pressure and selling to the same individual, Inder Desange, and his company, Karp. Now, I'm not sure how much of this is in the record. So when did he first learn that there was what he calls a pattern of Mr. Desange getting these dealerships in this fashion? My impression is that this happened within four years of when it happened to him. The events occurred in 2008 that were the underlying events. He did not become aware of them until within the four-year statute of limitation period. And actually the way he became aware of them is he was subpoenaed as a witness in that case. When did that happen? In 2012. 2012. Correct. And he had no idea about any of this until Within the four years of the first default. That is correct. But isn't that the purpose of the statute of limitations, that when you know you're injured, particularly under the injury discovery rule, you know you have an injury and then you have four years to determine what caused that injury. It isn't like you have to file right away and sue them right away. You have four years to do that. And within that four-year period, what you just said is he learned about this alleged practice. Well, he learned about – I'm sorry, I thought you meant within four years of him filing the lawsuit. I'm sorry if I No, within four years of the default is what I said. I don't know how that time relates to the default. I know that he received a subpoena in 2012, which is how he learned of all these shenanigans with regard to Ally and General Motors. And I see my time is short, but let me just say this. This is not an appeal from a summary judgment. This is an appeal from a motion to dismiss, which is the initial pleading stage. We all understand that the allegations have to be construed in the light most favorable to the plaintiff. But what we don't know is we don't know what evidence is going to come out in this case. So this case should be remanded to allow evidence to come out, because under this Court's teachings, the issue of when a plaintiff discovers this injury is really a factual question. So it's not something that can be decided purely on the pleadings itself. It's something that needs to be vetted through discovery, through depositions, through interrogatories, and ultimately through the jury process. And with that, I'll reserve any time I have for rebuttal. Thank you. We will have some time. Good morning, Your Honors. My name is Jan Chilton. Is that better? Yes. My name is Jan Chilton. I'm from Severson & Worson, and I'm here on behalf of Ally Financial and Kevin Raitt. Before I address the statute of limitations point, I'd like to make two preliminary points. One is we've raised alternative grounds, both Ally in our brief and General in our brief. We've raised alternative grounds for affirmance, which we believe are adequate apart from the statute of limitations point to affirm the dismissal of this case. In the reply brief, the plaintiff said that the Court shouldn't consider the alternative grounds, citing some case law about giving the opposing parties the opportunity to introduce evidence. Well, this is a dismissal. The complaint governs facts here. This went through repeated amendments, and the alternative grounds that we assert in the appellate briefs were raised in the district court. What are those alternative grounds? In our brief, we raised the alternative ground that causation of damage was not properly alleged here. And I want to get GM alleged several other alternative grounds that the RICO claim wasn't properly alleged, that it did not show the participation of the particular GM employees who were sued here, and several others. Did the court reach your alternative? No, it did not. But the alternative grounds point to my second preliminary point that I wanted to raise, which is that every time the plaintiff attempts to avoid the statute of limitations, the plaintiff gets into trouble on the liability theory. For example, the whole RICO conspiracy is supposedly that my client ally forced plaintiff to sell. Well, if you're forced to sell, you have to know that you're forced. You can't be ignorant of the fact that you're forced, otherwise the force has no meaning. Force is pressure that's recognized as pressure. So immediately... Yes, but he doesn't allege that he was tricked. No, I believe that... I don't think it can be read that generously, because one of the incidents of supposed force was a letter from Ally saying after the sale of the Cadillac dealership that the sale violated the floor plan agreement, and Ally was going to pull back or terminate the floor plan agreement. Costello, as alleged in the complaint, objected, said that isn't so, and Ally went to him anyway. Now, you cannot be unaware of those events. You simply can't. They occurred with full knowledge. The other point, though, is that insofar as the plaintiff tries to avoid injury discovery, he necessarily moves from I was forced to sell, because he clearly knew he sold, to, oh, well, the injury wasn't the sale. The injury was nonperformance of the agreements, the sale agreements. And that gets him into damage causation problems, because... word, it sounds intuitive and obvious and so on. I guess if somebody breaks my arm, that's obvious that it's an injury. On the other hand, when we're dealing with financial transactions, the mere fact that you're engaging in a transaction that you're just soon not engaged in, well, that may or may not be an injury, depending on whether or not it's wrongful. I mean, if the market goes down and I'm moving to San Antonio and I've got to sell my house, I don't want to do it, but I have to. I feel myself injury, but I don't think that's injury in a legal sense. What may be happening here is these events that are, in your view, are perfectly legal. Ally is withdrawing the floor plan. That obliges him to sell, as it turns out. But maybe that's just economic stuff. That's not an injury. The only injury takes place when a legal right of his is violated, and the legal right of his is violated when there's a breach of the contract. Exactly, Your Honor. So when is the breach of the contract? It often is the case that a failure to make a timely payment is not in itself a breach of the contract. How do we know that the failure to make the initial payment is the time when we look to, now, that's the breach that constitutes an injury, as distinct from when it's very clear that the promises really aren't going to be fulfilled? How do we know that? Well, first off, let me go back to the earlier contract that has to be breached before we even get to wrongful pressure, which is not the purchase contract, but the floor plan agreement. If what Ally did was simply enforce its rights under the warehouse or floor plan agreement, we have no ecoconspiracy at all. When you say the floor plan agreement, you're referring to the financing. That is true. Inventory finance agreement, we can call it. In the car industry, it's normally known as a floor plan agreement. Costello had to know that the supposed pressure was illegal, a breach of the floor plan agreement, if it was. He was a party to the agreement. He knew. You see, that's really tricky, because, you know, ordinarily when we talk about discovery, you know, all of a sudden I'm really sick after I took these pills. And everybody understands that's an injury. I got that. But when the floor plan is withdrawn, let's say the financing is withdrawn, that could be a perfectly innocent thing and not an injury at all. He doesn't know it's an injury until later on when things go south. Well, I would disagree. He's been injured by the mere fact that the floor plan agreement is withdrawn. There are three acts that were allegedly engaged in to put pressure on him. Increased curtailments. I can't remember. Similar sort of thing, required payments, and the termination of the floor plan agreement. Each of those things were either in compliance with the terms of the agreement, which he was clearly aware of since he signed it, or they were not. And he would know that because he was a party both to the agreements and to the events. Now, to get to your question, though, once he enters into the sale, first of all, the sale itself, a forced sale, is injury. Whether or not you get... Well, which is my first point, which... As to the second sale, yes. The Chevrolet dealership was forced, supposedly, by withdrawal of the floor plan agreement. The Cadillac sale was not. So what forced the Cadillac sale? The curtailments and the other supposed wrongful conduct. And were those, if we put aside the motivation and the conspiracy and so on that's been alleged, was there a right to do that curtailment? Well, of course, Ally asserts it was right to do it. They allege it was wrong. Well, but if you say that it was right to do it, how is he to know until he gets later evidence that that's an injury? I know that he doesn't like it. I got that. But if we're talking about adverse economic consequences, the mere fact that something bad happens to you economically, I don't think is necessarily an injury within the sense of triggering the statute. Well, I would agree, but here we're talking about are the demands made by the lender, are the lender's actions a breach of its contract? Now, that he has to know because he knows what the actions are and what the contract provides. There can't be any concealment here. Curtailments, for example, let's just take curtailments. Curtailments are payments made on aged inventory. If you have a car that's been sitting on your lot for more than 90 days, you have to pay more as a dealer to back it up because the inventory is on your lot, you know what the agreement calls for in terms of payments for curtailments. If the curtailment demand is wrongful, you know it right on the spot. And there's no contrary allegation, by the way, in the complaint. But you're saying that the curtailments were perfectly legal. Yes. Well, and he doesn't say at the time he thought they were illegal. He might have thought they were legal too. It's only later when he realizes, or according to his allegations, I mean, I'm not saying what's true here, that this is part of a scheme by Alley and others to wrongfully terminate and award them to some other. So at the time, I'm not sure how he knows he's injured if, in fact, it on his face looks like a perfectly lawful thing for Alley to have done. Motivation has nothing to do with the legality of the curtailment demand. It's either a breach of contract or it isn't. If it's not a breach of contract, it can't be a racketeering act. So it doesn't sound as though anything bad has happened yet. What's the first injury that he suffered? The forced sale. And it's an injury because of three things outlined in our brief. First off, if you're forced to sell something you don't want to sell, that's injury. If I force you to sell. You're forced wrongfully to sell. That's an injury. If you're forced to sell and you're merely enforcing your contractual rights, I mean, that's not a legal injury. It's something I don't want, but it's not a legal injury. But my point is that he had to know whether his legal rights under his contract were being violated by the demands made and alleged in the complaint. There's no way he could not know that. There's nothing about later motivation for GM's. What he contends he later discovered was the motivation for the demand. That didn't make it any more or less a breach of contract. Either the conditions were there, which made the demand legal, or they weren't. Why the lender wished to make the demand is simply irrelevant. As I understand the allegation of the complaint sympathetically construed, I'm doing a little work to construe it this way. It is that he was forced to sell it. He sold it at a fair price had the deal been fulfilled as promised. And he really isn't injured until it's clear that the deal isn't going to come through the way it was promised. And he doesn't know that that's true until it's pretty clear that Mr. Dessange, if I'm pronouncing it correctly, isn't going to pay. That's his argument as to why the free ring of bandits. You've summarized much better than my colleague here what his argument should be. But I don't believe that is a proper way of looking at the allegations of the complaint because here we had repeated defaults through February, and nothing new happened in June when he says he did discover it, other than. He says he discovered it when he decided the defaults really weren't going to be made up. Yeah. And so if he waited another 10 years and then decided, oh, defaults aren't going to be made up, he could sue 14 years after the event rather than a mere six. And to pick up on the visiting judge's comment, I'm sorry. My memory for names is bad. Yes, the discovery, the supposed discovery when subpoenaed occurred in 2012, which is obviously less than four years after the default and the events giving rise to this case. Thank you, Your Honors. Thank you, Your Honors. Just briefly. Let the visiting judge ask you a question. Absolutely. If you're forced to do something, that means you're doing something you don't want to do. Isn't that an injury? I don't believe it is, Your Honor. For a couple of reasons. What if I was forced to sell my car that I just bought and I didn't want to sell it? For some reason, somebody forces me. I don't care what the reason is. Aren't I injured? I'm losing something that I want to keep. Isn't that an injury? I don't believe it is for two respects. One in general and one as it specifically relates to our case. In your scenario, you're forced to sell your car. Well, if I give you fair market value for your car, if your car is worth $10,000 and I force you to sell it and I give you $10,000, you don't have a cognizable injury. Your sentimental value that you have for that car is something that the law does not recognize as an economic injury. So respectfully, I think the answer to the question is no. Let me change my hypothetical then. I have an income-producing property, a rental property, that I want to keep because I like the rent I'm getting from it. I'm forced to sell that even for a fair market value, but I don't want to. I'm forced to sell it. Some building inspector comes around and says, I want my brother-in-law to own this property. And you better do it or we'll start issuing building violations. And I say, okay, I have to do it. Don't you think that that's an injury? I don't, Your Honor. If you've been fairly compensated for it. As a matter of fact, the U.S. Constitution recognizes that when it allows for takings with just compensation. There's plenty of property owners that don't want to sell something that are forced to for whatever reason. That's my statute. That is an officially sanctioned process. Based on sound. This is not officially sanctioned. You're alleging that these people got together and forced something that your client didn't want to do. This is true. To a person that he didn't want to do it to or with. This is true. But I still respectfully submit that it's not an injury if you don't have an ability to sue for something. And there's not a cognizable ability to sue for the emotional attachment that one has for property. As it relates to our specific situation, even if it is an injury, as Your Honor said, that is a complicated word. I think the one thing that we can all agree on is this is a really complicated situation. And as Your Honor indicated, this is not something that he had done historically. That Pacasillo, the owner of Crown Chevrolet, had done repeated time and time again. These are two transactions in an individual's life. So how is someone who's been through two transactions in total supposed to be able to identify when he's been injured on something that involves a fairly complex financial scenario? It's just not something that a reasonable person would expect to have Mr. Casello understand. Particularly at this initial pleading stage. With that, Your Honor, I submit. Okay. Thank you. Thank you both sides for your arguments. Crown Chevrolet v. General Motors now submitted for decision. The next case on the argument calendar, Berry v. Jacquez.
judges: Tashima, W. Fletcher, Gettleman